May it please the court, my name is John Grayley, arguing on behalf of both Mr. Tillman and myself. I'd like to reserve approximately four minutes for the remainder of my time for rebuttal. Your Honor, I wanted to update the court a little bit on what's occurring below. It's my understanding that a new trial was reset by the Before a different judge. Before a different judge, but there's a new trial date. It's no longer May. It's now mid-July. My understanding is that the parties can't move that date for scheduling reasons and it's likely to be sometime in the fall. All right. It'll have been 18 months since the removal of counsel that Mr. Tillman still is without trial. I think that's an important fact because the case really is about Mr. Tillman and not necessarily about counsel and not necessarily about the court. But I'm very concerned about the rights of Mr. Tillman in this case. Mr. Tillman has lost his counsel for four years, who knows the case intimately, who would have brought the case to trial, although unfairly in April, but certainly by the following September. That right is gone. He remains in jail without trial as a result. That's not something we have to decide here, so maybe we need to get to your issue. Okay. Thank you, Your Honor. I just wanted to make that clear that that's the most paramount concern for me before this Court. And just to be clear, because you're here both on your behalf and your client's behalf. That's correct. You're here on his behalf with respect to the disqualification issue. Is that correct? The removal issue, yes, Your Honor. The removal of counsel. There are two orders in the case. And you're here on your behalf with respect to the bar referral? The sanctions issue, yes. The sanctions issue. That's correct. There are two orders in this case, the sanctions order and then the substitution order of counsel. Both are on appeal. The question here is what kinds of representations can a court insist counsel provide regarding effectiveness going forward? The notion that counsel must waive future ineffectiveness claims in order to remain is preposterous. And that is what the district court was trying to get me to do and which I refused to do. I had told the district court that its last-minute consolidation of cases was going to create a problem for the defense and for Mr. Tillman's ability to get effective defense. And the court wished me to waive that argument, and I declined. And that's it. So I – before we get to those, which goes more to the merits, I have a jurisdiction question, which you are probably not surprised about. I am not, Your Honor. And the question the court gave us was whether or not the cases moved because the State bar declined to proceed with discipline. That's an aspect that we want to hear about that. But even apart from that, whether under Flanagan and also under Mandamus jurisdiction, let's stick first with the substitution and the removal, whether this is the appropriate juncture for that to be determined given our case law. That's the first issue regarding Mr. Tillman's rights and the removal of counsel. And the Flanagan briefing that was submitted by the government and by Mr. Tillman is pretty extensive, and it's before the court. And I don't know that there's much to add to that briefing. I did – when the government did raise a jurisdictional issue, I did note that Mr. Tillman does have pendant jurisdiction to the extent that the court has jurisdiction over the sanctions order. And that sanctions order was the basis for the removal. The removal then becomes pendant jurisdiction because they are underlying – the underlying factual basis and the underlying premises for the removal is, in fact, the sanctions order. And so – so – That to some degree argues against your case, meaning your claim on either interlocutory or mandamus because they are so intertwined. And if we determine we can't hear his claim because of jurisdictional issues, not that it wouldn't be heard at some point, but that given our case law, those kind of claims, as you know, are generally heard after a determination is made below one way or the other, yours is intertwined with his, is it not? Mine is in the sense of what the parallel tracks are. They both emit from the same sequence of events. Of course, my track is completely different from Mr. Tillman's, and that's where we are today. We are today facing a sanctions order by a court against counsel for which the court clearly has jurisdiction. The government has acknowledged the court has jurisdiction over that sanctions order and continues to acknowledge that in its briefing on page 1 and page 18. And I think that that's very clear, that this is a sanctions order. The order makes a specific violation of an ethical rule. That – that and that is what, under Tellio and Ensign, this court is bound to find is an appealable order. How about Stanley? You know, Your Honor, I'm not clear what the language in Stanley actually means. It makes a broad reference to some other issues, but I think what was not necessarily involved in Stanley was this actual finding of an ethical misconduct to this degree. I think they're different in kind and degree. And I think that in Stanley what had happened, I believe, was the counsel had stepped in in clear violation of the court's order and had continued to proceed with the case and intercede in the case in clear violation of the court's order, and the court did provide some sanction to that counsel. But in the – it's the normal course of sanctions that we see in Rule 11 cases. That's not the type of sanction that we have here. We have a sanction of an ethical violation by counsel rather than an ethical violation by counsel. We have a sanction of an ethical violation by counsel rather than an ethical violation by counsel. And I don't believe that that's the case. And if it does, it would be contrary to every circuit opinion except for perhaps the Seventh Circuit. Yeah, we don't have to worry about that, though, because we only have the Ninth Circuit. I understand that, but I don't think we can interpret that case to mean something that puts this Court in conflict with all the other circuits. Oh, we have that problem all the time. Well, I would hope so. I mean, the other circuits may all be wrong. I think if you agree that that's what Stanley says, I think we have – we can't do anything about that without going in bank. The case is the case. Well, Your Honor, I don't believe Stanley prohibits this Court from exercising jurisdiction in this case. I think this case is more like U.S. v. Taliau. Suppose – but it's more like. That's correct. But I'm trying to figure out, are they in conflict? I mean, you're talking about conflicts outside the circuit. Those aren't the ones that bother me today. You can do that on a petition for rehearing in bank. What bothers me today is whether those two cases are in conflict. Well, Your Honor, I would hope the Honor would – the Court would take the opportunity to interpret its case law, if it could, consistent with the case law of the other circuits. Well, we have to start with interpreting it as in with our cases. I understand – I understand that, but I don't – I don't believe – I believe Stanley is open for interpretation. That's what I am arguing for this – for this Court. It's not a clear-cut reversal of Taliau. This Court has – has, in fact, reaffirmed Taliau in Ensign. And Taliau does remain, as Ensign said, the law of the circuit. And I don't think Stanley is meant to overturn other panels' decisions about the law of the circuit. But it does happen. We do have, inadvertently or otherwise, cases that come along and give us conflicts. And when we have those conflicts, we have to or should take them in bank. And we have to face that in this panel. So the question really is, you'd like to have us take Taliau, and fine, but you have to show us a way that we can distinguish Stanley, or the result will be that the panel may well ask for in bank to solve the problem. Well, I – How would you – how would you write the opinion if you're going to write it? Stanley is – Stanley is not inconsistent with Taliau because? Because in Taliau, what the Court there found was ethical violations of ethical principles of law that were – were, first of all, unfounded. And second of all, that were carried on with counsel in a way that that's not true in Stanley. Stanley is more of a run-of-the-mill, Rule 11 sanctions case. And it is a case in which – I'm not sure if I wrote that, that they would question my ability to stay on the bench. I've got to give them something more than me. Well, Your Honor, I don't believe that anyone would question the Court's ability to stay on the bench. But I think – That's life tenure. We like that. Regardless. But, Your Honor, I want to – I want to retreat back into what's really happening in this case and why it is, in fact, that gives the Court jurisdiction. The Court did not say in Stanley, we are overruling Taliau. It did not say that. Okay? And it didn't have to say that for what was before it. And I think that the distinction that's made, and I think it's explicitly made in Ensign, is these specific types of findings that were in this case. And that is what gives it the jurisdictional hook that is required to come into court, which the government acknowledges, and to stay into court. It's not necessarily the bar referral. It's not necessarily the bar referral that keeps – that brings it into court and that keeps it into court. Let me just ask you, just before we get to the bar referral and how it might relate. So let's play this out to its logical conclusion. Let's say that we can't address your client's claim at this stage, just for talking purposes, but we could address yours. Isn't that a backhanded way of basically addressing your client's claim? A portion of it, Your Honor. But don't forget, my client has had different counsel now for a year. Right. And that counsel is preparing its case. All right? And I'm not privy to what's going on in the case, obviously, but that comes to this And that is why Flanagan says, you know, we're going to wait. Wait and see. Wait and see. And don't forget, 90-something percent of cases plead out. You may never see. You may never see it. But let's say we took jurisdiction over your case. Okay. And then in order to make it have some effect for talking purposes, we would also let's say we determined that the district court was wrong or had an abuse of discretion. Then what happens? Well, I did outline in my opening brief maybe a possible scenario. And that is, the Court says, we think this order needs to be vacated. It was improperly imposed upon counsel. Not only do we have jurisdiction, but it's not moot because of the collateral consequences. I think I've recently submitted something to the Court about that. And the continued collateral consequence against counsel. And then it goes back to the district court with the new judge and the new counsel there, and the district court just holds a hearing and says, all right, how do you wish to proceed? I can bring in Mr. Grayley, who hasn't touched the case for a year, or I can keep with these counsel who have prepared the case for a year. And I think, based in balance, that perhaps staying with new counsel is the best way to go. And there would be very little anybody could do about that. I think that that's a wrong decision. But what that does, and this is why I'm asking you, that really is basically taking Mr. Tillman's case on appeal, in effect. If you're successful, you've basically put back, you've basically, in effect, said, okay, that the, backhandedly, that the substitution or disqualification, however you want to state it, was improper. So now you get another bite at the apple, which I know, you know, it's not unfair in a general principled sense, but it is at odds, you know, with Flanagan and these other cases. Well, I think it's perfectly consistent with Flanagan. Counsel, all the trial courts, not frequently, but do make error in the substitution of counsel issues. And courts of appeal look at that and say, but you didn't suffer any prejudice. You had counsel who came forward and who did their best job, and you've got to articulate to me what the problem is here before we can give you any relief. And that happens a lot. Not a lot, but frequently enough. And that's what Flanagan is saying. Come to us at the end of the day. Even if you're, even if that initial substitution decision may have been incorrect as a legal matter, for all kinds of reasons it can be incorrect. It can be incorrect because counsel, you know, there was a mistake of fact or there was a mistake of law. It could be incorrect for many, many reasons. Okay. So for your claim, leaving your client's claim separate then, you say it's not just the bar referral. You were about to launch into that. So I want to see. Correct. I mean, as the Court knows. I wanted to hear you. As the Court knows, there's further sanctions that have been imposed against counsel by the district court. And not only that, the problem here, and I think the problem that's articulated in the Ensign case and the cases in that vein in Tellio and Adams v. Ford and one that I came upon recently in looking at the mootness issue, Kirkland v. National that the continuing and pervasive disparagement of counsel will linger long after the close of the case. And, in fact, we recently, in researching the case for argument, I recently came across an issue that where, an instance where all these findings were repeated in an order that is now on Westlaw on having to do with speedy trial rights. I mean, this is a gift that keeps on giving here. So just to be clear, on the State Bar referral, that's, in effect, unreferred at this point, or it's over. Is that right? Well, you know, the State Bar never really says anything is over as far as I could tell. But they have determined not to go forward. They've determined not to go forward based on what they've been provided. Right. So as far as the referral itself, what we're then left with is the sanctions, right? The referral is kind of off the table at this point, or no? The referral, I would hope, is off the table. Although I recently read in some pleadings in the district court that were filed recently, there was some question about a Nevada Bar referral that had been made. I don't know if that's error or not. I've tried to check with the Nevada Bar. That's not? They will neither confirm nor deny. Okay. And so, but, yes, it is. The referral issue, I think, has been settled. Okay. So that's basic. Would you agree that that aspect of it is moot and we're left with the sanctions? We're left with the sanctions. Okay. The sanctions, the finding of ethical misconduct. Ethical. And don't forget the court, if it's moot, the court, the general remedy is for the court to vacate the order below, which would still leave the substitution order in place, but not the sanctions order. Right. So that then gives us, that then brings us to both jurisdiction and merits on your sanction order. That's correct. That's correct. And I don't really think that there's much, I gather there's very little dispute about the merits issue. It's clear I was working on the case. I told the judge I was working on the case. If the judge had even asked me about it, which he didn't, I tried to get it in there that I was continuing to work on the case. My billings show that I continued to work on the case. I filed motions working on the case. I did what I was supposed to do. And I made an error when I said in my email that I was going to suspend work on the case. I attempted to clarify that right away with the judge like I should, and if the judge felt that that was a problem, that I had made such an error, he could impose a minor sanction to that regard for that kind of error in the courts, which courts do all the time. They impose minor monetary sanctions if they think there's a problem with counsel conduct. But I clarified it, and the court was satisfied with that clarification and moved on. The problem is that the court developed this notion, which I am still confused about, that I have to promise that I'm going to waive my ineffectiveness claims for my client in order to proceed, which I think is wrong. And I was forced into this position of standing up there trying to argue on my client's behalf. I'm not, and preserve his issues, which we had already raised with the court because of the last-minute consolidation of cases, ballooned this case financially and effort-wise. I'd already preserved these issues, and here the court is asking me to waive them. And I thought, and I made that choice. I chose to defend my client's rights rather than stand up and say, sure, Judge, I'll be effective no matter what, you know. Kagan. So in the sense that you referenced at the outset of the discussion that your claims in effect are intertwined with your client's, why should we hear, it's not that your claims would not be heard, but my question is why should we hear them now? Well, we should hear them now because this thing keeps going for me. I keep getting, I got a decision out of there, out of this court regarding my future appointments. I got, I have, there's published now on Westlaw's an opinion that repeats this thing. I have, I practice in the federal courts. I'm a death penalty specialist. I'm learned counsel in eight or ten, eight districts. I have been appointed by the circuit as special counsel to assist private counsel in capital cases. My ability to assist the courts in these cases is critical to my livelihood and critical to my clients. I've done an enormously successful job on behalf of my clients, all facing the most serious charges that anyone can face in any courtroom. I've been brought in specially by judges to help in North Dakota and New York, here in Nevada and San Diego, to do this type of work for the court and for these clients. Judges are going to pop my name up and see this kind of stuff, and they're going to think twice about appointing me. And I would hope that that's not the case, but it is. And that's what judges do, and I know that's what judges do, and they'll have questions. I've already gotten questions about it, and I will continue throughout my career to get questions about it. And I think that's unfair to counsel, counsel who puts themselves forward for the least fortunate and the most severe charges that could ever be brought by the government. And that's just not fair to counsel. Let me ask you a question, going back to the Tallyo and Stanley. Assume for the sake of argument that through craft of hand we can't distinguish those two cases. That is, we find there is a conflict that's a problem for us in this case. We would have then to petition our brothers and sisters to take the in bank so that we could go forward. The other alternative is mandamus. What is your position as to whether or not mandamus is one of the things you could proceed on? Well, Your Honor, I did brief that in my reply when the jurisdictional issues were raised. And I know Judge Gould published – Judge Gould offered the Cole opinion that talks about mandamus in similar circumstances. I know it's been mentioned by the Court several times because it is a way out of this difficulty. And I have laid out why I think this is an important enough case, why there was clear error of the law in what the district court judge wanted, and there is unclear rules. And I firmly believe, I firmly believe, because I don't hold ill will to Judge Jones who's had a remarkable legal career. I firmly believe that if there were clear guidelines on these types of cases where the payment system is in – has the potential to jeopardize the defense, neither the district court nor I would have gone down the wrong road like we did. And I think that it's important, not just for counsel, but for the courts and for the defendants, to have clear rules in this regard. And as the Court knows, there aren't clear rules in this regard. And that is the problem we were both having that day in court. Now, when you suggest – I think you're suggesting that mandamus is a possibility. Are you suggesting that we consider these – your appeal as a mandamus or that you're in a position to bring a new action on mandamus? Your Honor, I ask that the briefing be considered as mandamus. I'm not in the habit of duplicating all my briefs so I can – and excerpts of record so I can submit the same thing over again. Well, the arguments are somewhat different between mandamus and straight appeal. They are, but mainly in the – in the context of why the Court should take the case, not in perhaps the substantive discussions of the legal errors or factual errors that may have been made. And I think I addressed those in my – in my briefing in the reply. I think I did lay some of that out for the Court. Well, as I understand, our rule is on these cases that even when we turn down mandamus, we have not yet ruled that mandamus is never available. The Court has ruled that mandamus is always available in these cases. Unfortunately, I'm not – I don't see one yet. But this is – But you're saying nothing's going to change between one mandamus and another. I don't think so, Your Honor, except for the fact that maybe there's going to be perhaps new instances where this order surfaces in some new fashion to harm counsel, continue to harm counsel's reputation, harm him financially, or to hurt Mr. Tillman. Okay. Well, let me – I just – we're going to hear from the government. But just to sort of cabin the argument, the government hasn't taken a position on this latter point for a variety of saying that it would be inappropriate. So I think that's the government's position. So on the first point, that's your client's appeal on the removal of counsel. Do I hear you say that, in fact, that is something that is typically not appealed on an interlocutory or mandamus basis in a criminal case? It's typically not. But the Court in the Geiger, United States v. Geiger, this Court did say, which was a case that Flanagan relied on extensively, where this circuit got it right compared to the other circuits. I think that in that case, the Court did say, look, we're going to leave mandamus open for cases where we think we need to take some review and engage in some action here on the behalf of the defendant. All right. Thank you. Thank you. Good morning. May it please the Court. I'm Elizabeth White with the United States. With respect to the first issue in this appeal, the Supreme Court just simply could not have been clearer in Flanagan when they wrote that a district court's pretrial disqualification of defense counsel in a criminal prosecution is not immediately appealable under 28 U.S.C. 1291. The court of appeals, quote, had no jurisdiction to review the disqualification order prior to entry of final judgment in the criminal case. Do you think that precluded mandamus? Well, you know, it's interesting. I don't know if Flanagan itself does, but the cases subsequent to that, I do think And that is because the requirements of mandamus, the mandamus requires that the party seeking the writ has no other means such as direct appeal of attaining the relief that they desire and that the Petitioner will be damaged in a way that's not correctable in appeal. Now, defense counsel cites Gonzales-Lopez as making some sort of shift from Flanagan, but in fact, Gonzales-Lopez doesn't even mention, doesn't even cite Flanagan and is talking about a very, very different thing. What Flanagan says is this is a question that should be decided after the case is over. Gonzales-Lopez is a post-conviction appeal on this counsel issue. And the distinction is there are, and I think this is important, there are two different Sixth Amendment rights that are at issue in these cases. One is every defendant has the constitutional right to effective assistance of counsel. That is across the board. Nonindigent defendants have a qualified right to hire their counsel of choice. And that was the issue in Gonzales-Lopez. And that in the this Court has in a couple of cases allowed for mandamus on attorney disqualification issues. The other one is Christensen is the one that I remember. Christensen v. Northern California, District of Northern California. And that issue, but the issue there was the defendant's right to hire their attorney of choice. And that is, and what the, what this Court said is if you don't deal with that beforehand, by the time the trial is over, the client will have already lost out on his Sixth Amendment right to hire his attorney of choice. But what Gonzales-Lopez made very clear, and I'll just quote it. Gonzales-Lopez says, they go on and on about how basically what Gonzales-Lopez says is that when talking about the Sixth Amendment right to hire your attorney of choice or to retain your attorney of choice, you don't have to show prejudice on appeal, you don't have to show that you had ineffective assistance, because the right is not the right to effective assistance of counsel. It's the right to counsel of choice. And then after going through that whole thing, they say, Nothing we have said here today casts any doubt or places any qualification upon our previous holdings that limit the right to choice of counsel. The right, and then they go on, they say the right to counsel of choice does not extend to defendants who require counsel to be appointed before them. So the issue in Mr. Tillman's case, the Sixth Amendment issue is his right to effective assistance of counsel, and that is a right that can be fully vindicated post-conviction. He has new attorneys. They are working on his case. They are preparing for a case. If, you know, in the opening brief, defense counsel says that he's going to be, now he's going to be going to counsel that are woefully unprepared and can't possibly represent him, if that actually is what ends up happening and he does not have effective assistance of counsel, that can be vindicated post-conviction. So mandamus is not appropriate because the right that the defendant has is a right that can be vindicated, that can be assessed, first of all. I mean, these are good, you know, he was appointed fine attorneys for this appeal or for this trial, and they are working diligently. And, you know, but if at the end of the day defense counsel's speculation is right and he's not going to have effective assistance of counsel, that's something that can be dealt with post-conviction, and that's why, again, that is not permitted. So I would say that this Court on that first issue just simply doesn't have jurisdiction. Now, with respect to the second issue, and as I, you know, I tried to explain it in our brief, we talked about this a lot in our office and really came to the conclusion that it's just not appropriate for the prosecution to get involved in this. And Mr. Greeley has filed, there was an excerpt of record, volume 4, which I was not served with, and this supplemental, I got the unsealed one, but I did not get the sealed one, and from what I gather in the discussion today, there were some additional order or something, and I don't, I'm not aware of that. I mean, I believe that it's there, but I don't have a copy of whatever that sealed excerpt of record, that supplemental was. But with respect to that, I won't comment except with two caveats. And one is, actually three now, because when I said in our answering brief that we appealable under the collateral order doctrine, that was really premised on the assumption that these were very separate, that this was completely separate from the merits. And now, here at argument this morning, it sounds like Mr. Greeley is arguing that these are intertwined, and if they're intertwined, then maybe it's not collateral, and I'm not really sure about that. Well, can you kind of waive that by the position the government took in its briefing? Well, I can comment on this point. Yeah. As I read your briefing, you kind of punted it to be between our court and the lawyer and the district court, and I'm a little worried about all of a sudden now to be able to come in and raise arguments that weren't even in the briefing.  No, I guess my only thing is, is that on the jurisdictional, what we argued in our answering brief is that, I mean, we acknowledged that this Court had jurisdiction to hear that because it was completely separate from the merits of the Mr. Tillman's case, and so. Okay. And then also, and I do just want to point out, and I do think that this is appropriate, but the Court asked both of us to be prepared to address mootness, and I don't know if you wanted me to address that as well. Again, I was going to come here this morning and say that this is moot because California Bar Association, Mr. Greeley says that they dismissed those claims, but now I'm hearing that there are some additional, that in the sealed supplemental excerpt there might be additional sanctions or something that might warrant review, so I'll leave that to this Court's discretion. And then just one thing with the factual record, and we did note this in our answering brief, and in February of 2013, the prosecutor wrote to Mr. Greeley, asked for his stipulation to do some testing on the cell phone, and the email that we got back, the email that the prosecutor got back from him said, I am not doing any more work on this case until I get paid. So, and we didn't know, obviously, about the communication that he was having at the same time with the CJA administrator and with the Court, and so we filed a motion to test the cell phone and noted in a footnote that we tried to get the stipulation because the Court had asked us to try to get the stipulation, and that Mr. Greeley had responded that he wasn't doing any more work on the case until he got paid. As it turns out, that was the same day as this email correspondence between the judge and Mr. Greeley. And I just point that out to the extent, I mean, obviously, there was not the kind of record developed that you might want developed on this, but the suggestion that there is nothing in the record to support the claim that he had stopped working on the case, that is just inconsistent with how he responded to the prosecutor. And with that, if the Court has any questions for me, otherwise I'll just submit. You indicated that the case, the issue is not immediately appealable under Flanagan. Yes. What about, what's the position of the government on mandamus? On mandamus, I would say that because the number, the first requirement of mandamus is that the party has no other means, such as direct appeal, to attain the relief. And the claim of, the claim, the relief that the defendant is entitled to, or the constitutional right that this defendant is entitled to as an indigent defendant who has appointed counsel, his Sixth Amendment right is the right to effective assistance of counsel. That can be tested post-judgment. You know, where, when you've got a case where it's the right to counsel of choice, you know, then you might be in a different situation. But the constitutional right that Mr. Tillman has is the right to effective assistance of counsel. And that is something that can be tested after. The other point, one thing that the Court said in Flanagan is that they said that post-conviction review is fully effective so long as you don't have to show prejudice. And they kind of left open the question, now, if you do have to show prejudice post-conviction to get relief, then maybe that's not immediately effective, fully effective, if you don't have to show it pretrial, right? If you have to make a greater showing post-trial, then maybe direct appeal is immediate effective. And to that I would say that the second requirement for mandamus is that the defendant has to show that he would suffer, that there is prejudice here, that he will be damaged or prejudiced in a way that is not correctable on appeal. So in this particular case, the showing that he would need to make to get mandamus is actually, I'm not sure about this wording, might even be greater or at least as stringent as the showing that he would have to make post-conviction. So that's another reason why mandamus is not appropriate. Well, in this instance, it's an ongoing, as he outlines it, it's an ongoing assault upon his ability. And it can't be corrected until the long process is over, and maybe not even then. Yes. And I'm sorry if I misunderstood your question. That whole answer that I just gave was about Mr. Tillman's, the removal of counsel. With respect to the sanctions, as I say, there's, it appears to me that there's a lot in the record that the government isn't privy to, and that there's, you know, that this has to do with billing and it has to do with oversight of the CJA panels, and it really just is very important for that process for the prosecution not to be involved. Any further questions? I have no questions. All right. Thank you. Thank you for your argument. We'll give you a minute. I think we've extended you quite a bit, but you may want to say something. I want to say a few quick points, if I may. Thank you very much. I think it's that your rebuttal will have to do with what the government just said. Absolutely. That's rebuttal. I know. There's some lawyers that don't understand what that word means. Limitation. Well, if you do jury work, you know that jurors are not very indulgent of rebuttal that keeps going on and on and on. So anyway, I just want to make some quick points. The mandamus issue and Mr. Tillman's appeal, the prejudice prong for the mandamus inquiry that gets him into court is not the equivalent of the Sixth Amendment prejudice prong. He does not need to show Sixth Amendment prejudice to get a mandamus petition, to get mandamus review. He needs to show some prejudice, absolutely, and clear air of law and reoccurring events and need for guidance, which I think are all present. And just that point, as to the sealed order by the court that I've recently submitted in response to the mootness question, because the question in mootness is whether or not relief would help count the litigant, which it clearly would, and whether or not there's collateral consequences, which they clearly are. It's only sealed because it was sealed below. And I approached the government with a mechanism for the government to review these matters, but the government took its position, and I respect that. In terms of the factual record, there was an e-mail to the U.S. attorney in the thick of things about it. And, yes, I did tell them I wasn't going to pay attention to their matter because I was not getting paid on the case. But I will say this, that's the inquiry that I wanted in the district court. I wanted the court to ask me, what have you been doing? Why did you send this e-mail? Why did you tell the government this? What are the reasons for that? And, in fact, is it true that you have ceased work on the case? And that is the inquiry the district court needed to make, and that is the inquiry we never had. And that's the problem here. Because if we had had that inquiry, all of that, all of that is imminently explainable. And I think I filed a brief right after the U.S. attorney filed theirs and said, no, that's not the problem with your stipulation. The problem with your stipulation is it's incorrect factually, legally, and I don't have the resources yet from the court to even evaluate this matter. That's the problem with your stipulation. And I think I clarified that pretty clearly for Judge Jones, and that's perhaps why he never asked a single question about it. All right. All right. Thank you. Thank you. I thank both of you for the argument this morning. The case just argued is submitted, and we're adjourned for the morning. Thank you.
judges: Wallace, McKeown, Gould